[No. B236391. Second Dist., Div. Four. Sept. 25, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL JESUS CARRASCO, Defendant and Appellant.

**COUNSEL**

Gerald Peters, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MANELLA, J.—**

## INTRODUCTION

In a case of first impression, we hold that where a defendant commits multiple acts of vandalism pursuant to a single general impulse, intention or plan, the fact that the damage is to property owned by more than one victim does not preclude aggregation resulting in an offense of felony vandalism.

Appellant challenges a jury verdict finding him guilty of felony vandalism. He does not deny that when his mother refused him entry to a house in which she was temporarily residing, he threw a statue through the front window of the house and thereafter broke the windows of her car. He contends, however, that because his father was the sole owner of the house, and the damages to the house and car respectively did not total $400 or more, he could be convicted only of two counts of misdemeanor vandalism. Guided by the rule of aggregation articulated by our Supreme Court in *People v. Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39] (*Bailey*) and construed in *In re Arthur V.* (2008) 166 Cal.App.4th 61, 68 [82 Cal.Rptr.3d 148] (*Arthur V.*), we hold that where a defendant engages in vandalism that causes damage to the property of more than one victim, aggregation of the damages amounts is appropriate when the damage did not result from separate and distinct criminal acts and was inflicted pursuant to a single general impulse, intention or plan. Where, as here, appellant's successive acts of vandalism were pursuant to a single angry impulse directed toward his mother's refusal to let him into the house, aggregation of the damages amounts was appropriate, and his conviction for felony vandalism must be affirmed.

Appellant also contends that the trial court improperly instructed the jury on aggregating damages, and that the court erred by failing to provide a separate instruction on the lesser included offense of misdemeanor vandalism. For the reasons stated below, we hold there was no reversible instructional error.

Finally, appellant contends the trial court erred in imposing two one-year enhancements for two prison priors pursuant to Penal Code section 667.5, subdivision (b).[1] Because appellant's admission to the prison priors encompassed all of the elements required to impose the enhancements, we affirm the sentence.

---

[1] All further statutory citations are to the Penal Code, unless otherwise stated.

## STATEMENT OF THE CASE

An information charged appellant with felony vandalism, for unlawfully and maliciously damaging or destroying over $400 worth of real and personal property belonging to Ruben Carrasco and Nellie Martinez (§ 594, subd. (a)). It was further alleged that appellant had suffered two prior convictions, one in 2006 and another in 2009, that "a term was served as described in Penal Code section 667.5 for said offense(s), and that the defendant did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of five years subsequent to the conclusion of said term." Appellant pleaded not guilty, and denied the special allegation.

Appellant's motion to bifurcate trial on the prison priors was granted, and he waived jury trial as to those allegations. On September 13, 2011, a jury convicted appellant of vandalism. The jury found the amount of damages caused by the vandalism was $400 or more. In a bifurcated bench trial, appellant admitted he had suffered two prior convictions within the meaning of section 667.5, subdivision (b). On October 3, 2011, the trial court denied probation and sentenced appellant to state prison for three years four months.

Appellant timely filed an appeal from the judgment of conviction.

## STATEMENT OF THE FACTS

On June 29, 2011, appellant had an argument with his mother, Nellie Martinez. He left the house and returned around 8:00 p.m. Martinez testified that when she refused to allow appellant to enter the house, the two started arguing. Appellant then threw a ceramic statue through the front window of the house. After throwing the statue, appellant broke two windows of Martinez's car, parked nearby. He also broke the windows of his own car.

Martinez testified she was the sole owner of the car. She paid $382 to repair the broken car windows. Martinez also testified she had no ownership interest in the house, but stayed there with appellant's father, Ruben Carrasco, for weeks at a time, while maintaining a separate residence in another city.

Ruben Carrasco testified that he owned the house, and paid $265 to repair the broken house window. He also testified he shared household expenses with Martinez.

The defense called no witnesses.

## DISCUSSION

Appellant contends there was insufficient evidence to support the jury's finding that the damages caused by his vandalism totaled $400 or more, as

there was no legal basis for aggregating damages from separate incidents of vandalism against multiple victims. He further contends the trial court improperly instructed the jury. Finally, he contends the trial court erred in imposing the one-year enhancements for the two prison priors because he did not admit "the existence of the requisite prison term and the nonexistence of the . . . 'washout' period." We address each contention in turn.

## A. Aggregating Damages Caused by Multiple Acts of Vandalism

Section 594 provides in pertinent part that "[e]very person who maliciously commits any of the following acts with respect to any real or personal property not his or her own . . . is guilty of vandalism: [¶] (1) Defaces with graffiti or other inscribed material. [¶] (2) Damages. [¶] (3) Destroys." It further provides that if the damages from the vandalism are $400 or more, the crime is punishable as a felony. If the damages are less than $400, the crime is punishable as a misdemeanor. (§ 594, subd. (b); *Arthur V., supra*, 166 Cal.App.4th at p. 68.)[2]

In *Bailey*, the Supreme Court held that for purposes of determining whether a defendant is guilty of grand theft, the value of stolen property from separate incidents of thefts may be aggregated if "the evidence established that there was only one intention, one general impulse, and one plan." (*Bailey, supra*, 55 Cal.2d at p. 519.) In *Arthur V.*, the appellate court applied *Bailey*'s reasoning to hold that damages from separate incidents of vandalism—each causing damages of less than $400—could be aggregated, "unless 'the evidence shows that the offenses are separate and distinct and were not committed pursuant to one intention, one general impulse, and one plan.' " (*Arthur V., supra*, 166 Cal.App.4th at p. 69, quoting *Bailey, supra*, 55 Cal.2d at p. 519.) *Arthur V.* involved an incident in which the defendant and his friends smashed the windshield of the victim's car, causing $150 of damages, and then kicked the victim, causing him to drop his cell phone, resulting in an additional $350 of damages. (*Arthur V.*, at p. 65.) The *Arthur V.* court held that the damages to the car windshield and the cell phone could be aggregated under the doctrine established in *Bailey*. (*Arthur V.*, at pp. 68–69.) In applying *Bailey*'s holding regarding grand theft to charges of vandalism, the *Arthur V.* court reasoned that the difference between misdemeanor vandalism and felony vandalism (which is based upon the amount of damages) is analogous to the difference between petty theft and grand theft (also based upon a damages amount). (*Arthur V.*, at p. 68.)

The *Arthur V.* court distinguished *In re David D.* (1997) 52 Cal.App.4th 304 [60 Cal.Rptr.2d 552] (*David D.*), which had questioned but not decided

---

[2] Vandalism that results in damages totaling more than $10,000 is also a felony, but is subject to a larger fine than vandalism causing damages between $400 and $10,000. (§ 594, subd. (b)(1).)

whether the *Bailey* doctrine applied to vandalism cases. (*Arthur V., supra*, 166 Cal.App.4th at pp. 66–67.) In *David D.*, the defendant was charged with tagging or spray painting multiple residences and businesses throughout the city during the course of an evening.[3] (*David D.*, at pp. 306, 310.) After noting that *Bailey* had been limited "not only to the crime of theft, but generally to thefts involving a single victim," the court went on to state that it "[did] not intend to imply . . . that the *Bailey* doctrine can never be appropriate to a theft or thefts from multiple victims." (*David D.*, at p. 309 & fn. 3.) In any event, the court concluded that application of the *Bailey* doctrine to the facts before it was inappropriate, as "each tagging incident clearly represent[ed] a separate offense affecting a different victim." (*David D.*, at p. 311.)

The *Arthur V.* court expressly rejected any suggestion that damages from crimes against multiple victims could never be aggregated under the *Bailey* doctrine. Although *Arthur V.* involved the property of a single victim, the court stated that "the existence of multiple victims will not *necessarily* preclude aggregation. For example, an offense consisting of the spray painting of one's name across property owned by multiple persons would clearly be properly aggregated into a single count, despite the presence of multiple victims." (*Arthur V., supra*, 166 Cal.App.4th at pp. 68–69, fn. 4.)

We find the analysis in *Arthur V.* persuasive and adopt it here. We note, moreover, that section 594 does not distinguish between vandalism resulting in damage to the property of a single victim or multiple victims. It simply provides that a defendant is guilty of vandalism if he or she defaces, damages, or destroys "real or personal property not his or her own." (§ 594, subd. (a).) The focus is not on the number of owners whose property may have been damaged, but on the nature of the property as "not [defendant's] own." Indeed, a current jury instruction for felony vandalism—CALJIC No. 14.95—does not limit aggregation of damages from multiple acts of vandalism to cases involving a single victim. That instruction provides that "[i]ndividual acts of vandalism totaling less than [the requisite amount for felony vandalism] may be aggregated so as to constitute the required minimum amount provided you are satisfied beyond a reasonable doubt that the perpetrator committed the acts pursuant to one intention, one general impulse, and one plan." In short, we conclude that damages from multiple incidents of vandalism—even directed at the property of more than a single victim—may be aggregated and charged as part of a single offense, where the facts show that the incidents of vandalism were not " 'separate and distinct,' "

---

[3] The court described the defendant's acts as having been committed "throughout the City of Madera" (*David D., supra*, 52 Cal.App.4th at p. 310), without specifying the amount of time that elapsed between each incident of vandalism or the distance between the various residences and businesses.

but were committed " 'pursuant to one intention, one general impulse, and one plan.' " (*Arthur V., supra,* 166 Cal.App.4th at p. 69.) Having reached this conclusion, we turn to whether the jury was properly instructed on vandalism and aggregation of damages.

B. *Jury Instructions*

1. *Relevant Factual Background*

Before trial, the judge informed the prosecution and defense counsel that rather than give a formal instruction on the lesser included offense of misdemeanor vandalism, it would instruct the jury on vandalism and require a separate finding as to the amount of damages. The court explained, "[i]t makes it much simpler if we just have a special finding" as to the amount of damages. As the court observed, if the jury found the amount of damages to be less than $400, the felony vandalism charge would "become[] a misdemeanor as a matter of law." Defense counsel agreed that the court could instruct the jury in this manner.

Before deliberations, the judge instructed the jury with CALCRIM No. 2900 as follows:

"The defendant is charged with vandalism in violation of Penal Code section 594. To prove that the defendant is guilty of this crime, the People must prove that, number one, the defendant maliciously damaged or destroyed real or personal property.

"And, number two, the defendant did not own the property. Someone acts maliciously when he intentionally does a wrongful act or when he acts with the unlawful intent to annoy or injure someone else."

Over defense counsel's objection, the trial judge also instructed the jury on the amount of damages caused by vandalism with a modified version of CALCRIM No. 2901:[4]

"If you find the defendant guilty of vandalism, you must then decide whether the People have proved that the amount of damage caused by the vandalism was $400 or more.

"If you find the defendant committed more than one act of vandalism against the same victim or same household, under one general impulse and

---

[4] The second paragraph of the instruction was added by the court.

one plan and the damage for each act is less than $400, but aggregating more than that sum, you may find the total damage to be in excess of $400.

"The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved."

During deliberations, the jury sent a note asking the trial court, "Is there a legal definition of a household?" After consulting with the prosecutor and defense counsel, the trial court responded: "There is no 'legal' definition of 'household.' However, any word or phrase that is not defined in the instructions is to be applied using ordinary everyday meaning." After further deliberations, the jury returned with its verdict. It found appellant guilty of vandalism, and separately found true that the amount of damages caused by the vandalism was $400 or more.

### 2. *Alleged Instructional Errors*

Appellant contends the trial judge committed several instructional errors. First, he contends the court should have instructed the jury with CALJIC No. 14.95 (felony vandalism) and given a formal instruction on the lesser included crime of misdemeanor vandalism.[5] Second, he contends the jury was improperly instructed that it could aggregate damages from separate acts of vandalism against the property of different victims. Finally, he contends the instructions impermissibly allowed the jury to aggregate damages from multiple acts of vandalism in the absence of a single general impulse, intention or plan.

We independently "assess[] whether instructions correctly state[d] the law [citation] and also whether instructions effectively direct[ed] a finding adverse to a defendant by removing an issue from the jury's consideration [citations]." (*People v. Posey* (2004) 32 Cal.4th 193, 218 [8 Cal.Rptr.3d 551, 82 P.3d 755].) In deciding whether instructional error occurred, this court "determine[s] whether it is reasonably likely the jurors understood the instruction as appellant suggests. [Citation.] In making that determination, we must consider several factors including the language of the instruction in question [citation], the record of the trial [citation], and the arguments of counsel. [Citation.]" (*People v. Nem* (2003) 114 Cal.App.4th 160, 165 [7 Cal.Rptr.3d 478].)

Although the trial judge could have given CALJIC No. 14.95 and a formal instruction on the lesser included offense of misdemeanor vandalism, the trial

---

[5] Had the judge given CALJIC No. 14.95, an instruction on the lesser included offense of misdemeanor vandalism would have been required, as CALJIC No. 14.95 applies only to felony vandalism.

court did not err by instructing the jury with CALCRIM Nos. 2900 and 2901. The jury was instructed with CALCRIM No. 2900 on vandalism, and appellant does not challenge the correctness of that instruction. The jury was also instructed, pursuant to CALCRIM No. 2901, to make a finding on the amount of damages resulting from the vandalism. Instructing the jury in this manner has been approved by the Judicial Council of California. The Bench Notes for CALCRIM No. 2900 provide: "If the court is instructing on both the felony and the misdemeanor offenses, give CALCRIM No. 2901, Vandalism: Amount of Damage, with this instruction." (Italics omitted.) That is what the court did. The jury found appellant liable for vandalism; had it found that damages were less than $400, appellant's conviction would have been for misdemeanor vandalism. Thus, on this record, there was no error. The jury was properly instructed on the substantive elements of the crime of vandalism, which are the same whether the charge is for felony or misdemeanor vandalism. There was no need to provide a duplicative instruction on the lesser included offense of misdemeanor vandalism.

Appellant contends, however, that the trial court erred by modifying CALCRIM No. 2901 to permit the jury to aggregate damages from multiple acts of vandalism. For the reasons set forth above, we disagree. The challenged instruction comports with the *Bailey* doctrine and the holding in *Arthur V.*, as it provides that damages from separate acts of vandalism may be aggregated only if the acts were committed under one general impulse and plan.

Appellant further contends the judge should have defined the term "household" for the jury, but we conclude that any error was harmless beyond a reasonable doubt. Whether a household constituted one victim, as the trial court believed, or multiple victims, as appellant contends on appeal, is irrelevant, as under the *Bailey* doctrine, aggregation is permissible regardless of the number of victims, unless the acts of vandalism were " 'separate and distinct' " and were not committed " 'pursuant to one intention, one general impulse, and one plan.' " (*Arthur V., supra*, 166 Cal.App.4th at p. 69.)[6]

Appellant also contends the instruction improperly allowed the jury to aggregate damages from multiple incidents of misdemeanor vandalism against the property of separate victims, even in the absence of a single general impulse, intention or plan. We disagree. The instruction clearly provided that the jury could find the total damages from separate incidents of

---

[6] In their appellate briefs, both parties extensively discuss the definition of "household" and whether Nellie Martinez and Ruben Carrasco constituted a single household. We decline to reach the issue of the legal meaning of "household" because we conclude that acts of vandalism against property belonging to multiple victims may be aggregated under the circumstances of this case.

vandalism to be $400 or more only if it found *all* of the following: (1) that appellant committed more than one act of vandalism against the same victim or the same household, (2) that appellant committed the acts under one general impulse and one plan, and (3) that each act of vandalism caused damages that were less than $400, but when added together totaled more than $400. Thus, regardless of the jury's interpretation of the word "household," it could not have found appellant guilty of felony vandalism without finding that he acted under a single impulse or plan *and* inflicted damages totaling more than $400.

Although appellant suggests the evidence was insufficient to show he acted "pursuant to one intention, one general impulse, and one plan," the record is to the contrary. The jury heard testimony that appellant was angry with his mother and argued with her. When she refused to let him into the house, he threw a ceramic statue through the front window of the house, and then broke two windows of her car. The jury also heard testimony that it cost $265 to repair the house window, and $382 to repair the car windows. From this evidence, the jury could find all of the facts necessary to aggregate damages. First, there was no dispute that during this incident, appellant committed two acts of vandalism (breaking the house window and breaking the car windows). Second, a reasonable jury could find that the two acts of vandalism were not "separate and distinct," because they occurred within the same time period and at the same location. In addition, a reasonable jury could find that the acts were committed under one general impulse or plan: appellant was angry at his mother, and acted on that emotion by committing the two acts of vandalism—one directed at the residence where she was staying and one directed at her car. Both were part of the same rampage. Finally, each act of vandalism caused less than $400 of damages, but together totaled more than $400. In short, there was sufficient evidence to support the jury's finding that appellant's vandalism caused damages of $400 or more.

## C.   *Section 667.5 Enhancements*

Finally, appellant contends the trial court erred in imposing two section 667.5 enhancements, as he admitted only the fact of the prior convictions, not the additional facts that he served separate prison terms for those priors and that he committed a new crime within the five-year "washout" period. (See *People v. Epperson* (1985) 168 Cal.App.3d 856, 864–865 [214 Cal.Rptr. 540] [striking enhancements for § 667.5 priors because defendant's admission to "convictions" did not include admissions of all necessary elements of the enhancements].)

On the record before us, we find appellant's admissions sufficient to encompass both the facts of the convictions and the elements of the enhancements set forth in the information and alluded to by the court. The information alleged that appellant had suffered two prior convictions, one in 2006 and another in 2009, that "a term was served as described in Penal Code section 667.5 for said offense(s), and that the defendant did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of five years subsequent to the conclusion of said term." The court referred back to the information when it held a court trial on "the unresolved prior felony convictions which were bifurcated from the trial," noting specifically that "[t]hese are both state prison priors pursuant to 667.5, subdivision (b)." When asked whether he understood that he could be sentenced to serve an additional one year for each of the two state prison priors, appellant responded that he did, and then admitted the priors. The trial court found the prior convictions true "within the meaning of Penal Code section 667.5, subdivision (b)."

In light of the totality of the circumstances (see *People v. Mosby* (2004) 33 Cal.4th 353, 356 [15 Cal.Rptr.3d 262, 92 P.3d 841]), we conclude that appellant admitted the allegations set forth in the information, which included all the elements under section 667.5, subdivision (b). (See *People v. Ebner* (1966) 64 Cal.2d 297, 303 [49 Cal.Rptr. 690, 411 P.2d 578] ["Defendant's admission of the prior convictions is not limited in scope to the fact of the convictions but extends to all allegations concerning the felonies contained in the information."].) Accordingly, the trial court did not err by imposing the one-year prior prison term enhancements.

## DISPOSITION

The judgment is affirmed.

Epstein, P. J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 3, 2013, S206317.